Submitted October 31, 2013, reversed and remanded July 22, 2015

RICHARD D. HARTWELL,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A150858

356 P3d 86

Peter Gartlan, Chief Defender, and Erica Herb, Deputy Public Defender, filed the brief for petitioner.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jeremy C. Rice, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

ARMSTRONG, P. J.

**ARMSTRONG, P. J.**

Petitioner, who was convicted of murder and first-degree arson in 1985, seeks judicial review of an order of the Board of Parole and Post-Prison Supervision that postponed his scheduled release date for eight years, based on its conclusion that he suffers from a present severe emotional disturbance such as to constitute a danger to the health or safety of the community. *See* ORS 144.125(3). On review, he argues that the board erred in refusing to permit an assistant to speak on his behalf at the hearing and that the board's decision to do that violated various state and federal antidiscrimination laws. We reject the latter arguments without discussion. As to the former argument, we agree with petitioner that the board erred in its application of OAR 255-30-025 (1982) when it required petitioner to choose between having his mother speak at the hearing or having his inmate legal assistant do that. Accordingly, we reverse and remand.

The pertinent facts are procedural and not in dispute. Petitioner is serving a life sentence. Petitioner became eligible for parole in 1997, and his projected parole release date has been deferred on numerous occasions since that time based on findings of present severe emotional disturbance and institutional misconduct. The present case concerns petitioner's 2010 parole exit interview, which, as noted, resulted in a postponement of his release for an additional eight years.

Petitioner was scheduled for a hearing on August 4, 2010. The hearing notice for his hearing indicated that "inmate legal assistants [are] available through the legal library who can assist you in preparing for the hearing, and who may accompany you to the hearing." Additionally, the notice provided: "You may be accompanied by one person of your choice to the hearing, who may make a statement on your behalf."

At the hearing, petitioner was accompanied by an inmate legal assistant, David Atkinson. The following exchange occurred:

"[BOARD CHAIR:] Okay. And before we proceed any further, [petitioner], you have the option of having someone speak on your behalf. And that can be someone of your choosing. And your mother is here and also Mr. Atkinson is here. And it is up—it's purely up to you whether you wish to have someone speak and who that is and—

"[PETITIONER:] Your Honor.

"[BOARD CHAIR:] Who might that be?

"[PETITIONER:] Well, my mother—my mother wanted to speak but yeah, I can have my mother speak. But she doesn't really know much about what's going on, how—what really to say in a way. And she's—she would recommend some things for me, and stuff like that.

"[BOARD CHAIR:] Well, sir, again this is—this is your case. It is really—I can't help you make that decision. So you need to make that decision who you'd like to speak on your behalf."

"[PETITIONER:] Well, at the end of the hearing I'm going to have Dave [Atkinson] speak, too.

"[BOARD CHAIR:] Well—

"[PETITIONER:] I mean the legal assistant.

"[BOARD CHAIR:] Well, sir, he cannot speak on your behalf. By Board rule, only one person can speak on your behalf as your supporter."

Petitioner elected to have his mother be designated as the person allowed to speak on his behalf. Throughout the hearing, the board members attempted to talk to petitioner about his criminal history, his parole plans, and other topics relevant to their determination of whether he should be paroled. Many of petitioner's statements were non-responsive, incoherent, and highly tangential, although it is clear that the board as well as petitioner's assistant tried to redirect him at various points. Petitioner's mother, who appeared telephonically, indicated that petitioner needed "a lot of * * * help" and that he had had significant communication difficulties in the past. A prosecutor from Multnomah County also spoke at the hearing, reviewing petitioner's criminal history and pointing to the frustration petitioner had expressed at various points during the hearing as an

example of how petitioner would not do well on parole. At the close of the hearing, Atkinson requested to be allowed to speak but was not allowed to do so.

After the hearing, the board issued an order concluding that petitioner suffered from a present severe emotional disturbance such as to constitute a danger to the health or safety of the community, ORS 144.125(3)(a), and postponed his scheduled parole release for eight years. In that order, the board found that petitioner did not understand the factors that had led him to commit his crimes, that he had not made sufficient efforts to address criminal and psychological risk factors, that he was unable to articulate any understanding of the risks and barriers that he would face if paroled, and that he "demonstrated poor impulse control and limited understanding of his criminogenic needs during his hearing," making reference to paranoid and tangential issues about which petitioner had spoken during the hearing.

Petitioner sought administrative review of the board's order, asserting, in pertinent part, that

"OAR 255-30-025(3) (1982-1985) allows [petitioner] to be accompanied by inmate legal assistant David Lee Atkinson for the express purpose of providing [petitioner] with assistance in presenting his position to the Board due to his mental or emotional incapacity to do so himself.

"OAR 255-30-025(4) (1982-1985) specifically prohibits the board from precluding [petitioner] from having both the assistance of inmate legal assistant David Lee Atkinson * * * in presenting his position to the board and the accompaniment of his mother Mrs. Jean Hartwell and her statement on his behalf."

The board issued an administrative review response (ARR) in January 2012, rejecting petitioner's arguments and upholding its initial order. The ARR states, in part:

"In your administrative review request you first allege that the Board erred in not allowing inmate legal assistant David Atkinson to speak on your behalf, in addition to a statement made by your mother. You assert that under OAR 255-30-025 (5/19/1982), the Board is required to allow both the inmate legal assistant and your support person

to speak. You further allege that you were thus unable to present your thoughts and ideas adequately, given that you suffer from a mental illness. The Board has reviewed these allegations and does not find that it has erred. OAR 255-30-025 clearly separates the two persons who are allowed to assist an inmate at a parole hearing: (1) a person of the inmate's choice who is allowed to make a statement; and (2) an 'assistant' who is appointed to help an inmate in the hearing. The rule does not state that the assistant may make a statement independent of assisting the inmate. Upon review of the substance of the hearing, the Board finds that the inmate legal assistant was in the room with you, with you both appearing before the Board by video-conference. You and Mr. Atkinson conferred several times throughout the hearing, and he can be heard on the audio recording giving you advice, redirecting your statements, and pointing out documents to you. At the same time, you were articulate and were able to answer questions and discuss issues with the Board. It is noteworthy that the only time during the hearing that Mr. Atkinson requested the opportunity to make a statement was after the Board's decision was already made and the findings announced, at which point his statement could have had no effect on the decision."

On judicial review, petitioner challenges the board's interpretation of OAR 255-30-025 (1982), which provides, as relevant:

"(1) The prisoner shall appear at the Parole Board hearing unless the prisoner waives parole in writing or by refusal to appear. * * *

"(2) The prisoner may be accompanied by a person of the prisoner's choice. * * * The person accompanying the prisoner may make a statement, not to exceed five minutes, at the conclusion of the hearing.

"(3) Assistance to prisoners *incapable of presenting their position due to* language barriers, *mental or emotional incapacity* or educational deficiency shall be provided to prisoners meeting these criteria by persons recommended by the institution superintendent and appointed by the chairperson of the panel.

"(4) If the prisoner needs assistance and has an assistant appointed by the chairperson pursuant to this

subsection, this shall not preclude the prisoner being accompanied to the hearing by a person of the prisoner's choice."

(Emphasis added.)

Petitioner asserted to the board on administrative review, and reiterates on judicial review, that Atkinson attended the hearing on his behalf pursuant to subsection (3) of that rule, and that, as quoted above, the board in its administrative response interpreted that rule to mean that a person assisting a prisoner pursuant to subsection (3) of the rule was not permitted to speak at the hearing if the prisoner had chosen a different person to speak on his behalf pursuant to subsection (2) of the rule.[1] Petitioner contends that the board's interpretation of the rule is incorrect. In particular, he points to subsection (4) of the rule as supporting his assertion that a prisoner should not be forced to choose between having an assistant speak on the prisoner's behalf pursuant to subsection (3) and being accompanied by a person entitled to make a statement pursuant to subsection (2). Subsection (4) specifically provides that having an assistant appointed "shall not preclude the prisoner being accompanied to the hearing by a person of the prisoner's choice." Petitioner asserts that those provisions, read together, provide that an assistant appointed pursuant to

---

[1] In its response brief on appeal, the board states that it is not clear that this rule applied to the 2010 hearing and that it is more likely that "the current rule applies." The board goes on to note, however, that it assumed for purposes of administrative and judicial review that the 1982 rule applied. We express no opinion as to whether the board was or is required to apply the 1982 version of the rule. The board did purport to apply the 1982 rule in the present case, and the sole issue that we address on review is whether the board erred in its application of that rule to petitioner.

We note, in particular, that the board does not dispute the premise that Atkinson was present at the hearing pursuant to subsection (3) of the rule, and that he had been duly appointed because petitioner was "incapable of presenting [his] position due to language barriers, mental or emotional incapacity or educational deficiency." OAR 255-30-025(3). To the extent that the board's administrative review response hints that petitioner did not need such assistance—indicating that petitioner was "articulate" and "able to answer questions and discuss issues"—that statement is undermined not only by the record, which shows that petitioner made numerous incoherent and nonresponsive statements throughout the hearing, but by the board's own conclusions in its initial order that petitioner was "unable to articulate any understanding of the risks and barriers" he would face on parole and that various of petitioner's statements at the hearing demonstrated "limited understanding of his criminogenic needs."

subsection (3) may speak on a prisoner's behalf *in addition* to the prisoner being accompanied by another person who is entitled to make a statement. Petitioner points out that, if a person has been deemed to be mentally incapacitated in such a manner as to render him "incapable of presenting [his] position," and thus is entitled to "assistance" pursuant to subsection (3), it would make little sense to limit that assistance by not allowing the assistant to communicate on the incapacitated person's behalf.

The board argues in response that we must defer to its interpretation of the rule, because its interpretation is "plausible." *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994) (reasoning that, if an agency's "plausible interpretation of its own rule cannot be shown either to be inconsistent with the wording of the rule itself, or with the rule's context, or with any other source of law, there is no basis on which this court can assert that the rule has been interpreted 'erroneously'"). As explained below, we disagree that the board's interpretation of its rule is "plausible" in light of the wording of the rule and its context.[2]

We begin with an overview of ORS 144.125, which governs the process at issue here. That statute provides that, before a prisoner's scheduled release, the board may "interview the prisoner to review the prisoner's parole plan and psychiatric or psychological report, if any, and the record of the prisoner's conduct during confinement." ORS 144.125(1). Under subsection (3) of that statute, the board may defer a prisoner's scheduled parole release date if it finds that "the prisoner has a present severe emotional disturbance such as to constitute a danger to the health or safety of the community." Under that statute, the hearing that the board held

---

[2] Petitioner also suggests that the board's interpretation of the rule is inconsistent with another source of law—in particular, the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See, e.g., Swarthout v. Cooke*, 562 US 216, 131 S Ct 859, 178 L Ed 2d 732 (2011) (in context of parole, procedural due process requirements are minimal and are satisfied if a prisoner is given an opportunity to be heard and provided a statement of reasons why parole was denied). Because we conclude that the board's interpretation of its rule was not plausible, we do not decide whether due process requires that a person appointed to assist a prisoner with an impaired ability to communicate must be allowed to speak on the prisoner's behalf at a parole hearing.

was described, in its notice of hearing to petitioner, as an "exit interview."

We examine the disputed rule in light of those stated purposes for the hearing—to "interview" petitioner concerning his parole plan, psychiatric or psychological report, and his conduct during confinement. To "interview" is to "question or converse with, esp[ecially] in order to obtain information or ascertain personal qualities." *Webster's Third New Int'l Dictionary* 1184 (unabridged ed 2002). Under OAR 255-30-025 (1982), a prisoner being interviewed in such a hearing is entitled to "assistance" if the prisoner is "incapable of presenting [his] position" due to mental incapacity. The presentation of a person's "position" during an interview involves—as a general matter—speaking. It follows that a prisoner who is entitled to the "assistance" of another person in an interview because the prisoner is incapable of presenting his position is entitled to assistance in speaking, because speaking is required in order to communicate the prisoner's position. It is difficult to understand how such assistance may be meaningfully rendered by a person who is prohibited from speaking on the prisoner's behalf at the hearing.[3]

An agency interpretation of the terms of its administrative rule must be plausible for its interpretation to be afforded judicial deference. *See, e.g., Noble v. Dept. of Fish and Wildlife*, 355 Or 435, 451, 326 P3d 589 (2014) (rejecting agency interpretation of rule that would, in effect, render certain provisions circular or meaningless). It is not plausible that OAR 255-30-025(3) (1982) was intended to provide for an individual to assist a prisoner at a hearing when the prisoner had been determined to be incapable of presenting his or her position but not to allow the person assigned to assist the prisoner to speak on the prisoner's behalf. Such an interpretation would conflict with the statutory purpose of the hearing, which is to "interview" a petitioner regarding "the prisoner's parole plan and psychiatric or psychological

---

[3] The difficulty of the board's position becomes apparent when the rule is considered in light of another context in which it applies. The rule applies in situations in which a prisoner is entitled to assistance due to "language barriers." The purpose of the exit interview would in no way be furthered by providing an interpreter for a prisoner with a language barrier but not allowing the interpreter to speak.

report, if any, and the record of the prisoner's conduct while in confinement." ORS 144.125(1).

We recognize that, in the present case, the board did not flatly prohibit Atkinson from speaking on petitioner's behalf. Rather, it indicated that, should petitioner choose to have Atkinson speak, petitioner's mother would not be allowed to speak (or vice versa). Requiring a prisoner to make such a choice is inconsistent with subsections (2), (3), and (4) of the rule, as those provisions are read together. As noted above, it is not plausible to read subsection (3) as precluding an assistant from speaking on a prisoner's behalf, when the prisoner has been determined to be incapable of presenting his position. Subsection (4) makes it clear that the presence of an assistant pursuant to subsection (3) "*shall not preclude* the prisoner being accompanied to the hearing by a person of the prisoner's choice." (Emphasis added.) Pursuant to subsection (2), the person whom the prisoner has chosen to accompany him or her "may make a statement, not to exceed five minutes, at the conclusion of the hearing." Thus, in the circumstances of this case, applying OAR 255-30-025 (1982), we conclude that the board erred in requiring petitioner to choose between having his mother make a statement on his behalf pursuant to subsection (2) and having his assistant speak pursuant to subsection (3).

We thus conclude that the board erred as a matter of law in its application of OAR 255-30-025 (1982) to petitioner. Accordingly, we reverse and remand for further proceedings.

Reversed and remanded.